**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**SAN ANGELO DIVISION**

| | | |
|---|---|---|
| **APPLIED US ENERGY, INC. dba** **KNOX OIL FIELD SUPPLY,** | § § § | |
| *Plaintiff*, | § § | |
| **v.** | § § | **CASE NO. _____** |
| **HARVEY HALE and CP&S, INC. dba** **COWBOY PUMP & SUPPLY** | § § § § | |
| *Defendants*. | § § | |

## PLAINTIFF'S ORIGINAL VERIFIED COMPLAINT AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Plaintiff Applied US Energy, Inc. dba Knox Oil Field Supply ("Plaintiff" or "Knox Supply") files this Original Verified Complaint and Application for Temporary Restraining Order and Preliminary Injunction against Defendants Harvey Hale ("Hale") and CP&S, Inc. dba Cowboy Pump & Supply ("CP&S," and collectively with Hale, "Defendants"). In support of its pleading, Plaintiff Knox Supply shows as follows:

### I.    NATURE OF THE CASE

1.     Hale is a former employee of Knox Supply, who worked as Knox Supply's Corporate Sales representative for the region covering Mertzon, Texas and Sterling City, Texas. In this role, Hale had access to Knox Supply's confidential information and trade secrets relating to Knox Supply's operations, clients, strategy, and business opportunities, including its customer lists and customer data, processes, technologies, competitor analysis, vendor lists, master operations documents, client project proposals and bids, bidding strategies, client pricing, and client master services agreements.

2.      Hale terminated his employment with Knox Supply on May 18, 2023, and has since been employed by CP&S, a direct competitor to Knox Supply. Based on recent departures of other Knox Supply employees who have left Knox Supply to join CP&S, Knox Supply conducted a search of its employee computers, emails, and files to determine whether any proprietary or otherwise confidential information belonging to Knox Supply was taken, used, or disclosed without its authorization.

3.      In that regard, Knox Supply discovered that on May 15, 2023, during Hale's employment with Knox Supply, Hale received an email from one of Knox Supply's customers in which the customer requested Hale—on behalf of Knox Supply—to review and sign a Master Services Agreement with that customer. Rather than provide the requested Master Services Agreement to Knox Supply, Hale forwarded the customer's email to CP&S which, based upon information and belief, ultimately engaged Knox Supply's customer and signed the Master Services Agreement, thereby diverting the business from Knox Supply to CP&S. Three days after providing Knox Supply's customer communication and documentation to CP&S, Hale left his employment with Knox Supply to join CP&S.

4.      Additionally, Knox Supply has since discovered that on April 21, 2023, Hale was copied on an email from one of Knox Supply's customer sales representatives to a Knox Supply customer in which Knox Supply was providing a specific price quote to such customer. Three (3) days later on April 24, 2023—less than a month before his employment with Knox Supply ended, Hale forwarded such customer email with Knox Supply's confidential price quote to his ***personal*** email address. It is clear that Hale did so to misappropriate Knox Supply's confidential and trade secret information for his personal benefit and for the benefit of Hale's new employer—CP&S.

5.     An injunction is necessary to prevent Hale and CP&S's threatened and actual misappropriation of Knox Supply's trade secret and confidential information. Specifically, Knox Supply seeks injunctive relief to prohibit Defendant's access to and use of Knox Supply's confidential, trade secret information. Time is of the essence because Hale and CP&S have Knox Supply's confidential information and trade secrets in their possession and are already utilizing it to compete with Knox Supply. Accordingly, Knox Supply has already suffered, and without a temporary restraining and preliminary injunction will continue to suffer, substantial irreparable harm to its business as a result of Hale and CP&S's actions.

6.     Knox Supply also seeks actual damages based on Hale and CP&S's conduct as described herein, and its attorneys' fees and costs to which it is entitled.

## II.    PARTIES

7.     Plaintiff Applied US Energy, Inc. dba Knox Oil Field Supply is an Ohio corporation registered to do business in Texas.

8.     Defendant Harvey Hale is an individual residing in the State of Texas who may be served at his domicile located at 2201 Sherwood Loop, Mertzon, Irion County, Texas, or wherever else he may be found.

9.     Defendant CP&S, Inc. dba Cowboy Pump & Supply is a Texas corporation that may be served through its registered agent John Arnold, located at 601 S. 11th St., Abilene, Texas 79602, or wherever else he may be found.

## III.    VENUE AND JURISDICTION

10.     Subject matter jurisdiction is proper in this Court under 28 U.S.C. § 1331 because it involves claims that arise under federal law. This Court also has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 by virtue of the parties' diversity of citizenship and the value

of these claims that is in excess of $75,000.00, exclusive of interest and cost. Additionally, this Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

11.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1)-(2) because Hale and CP&S are both residents of the Northern District of Texas, Hale is a resident of the San Angelo Division of the Northern District of Texas, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Northern District of Texas.

## IV.    FACTUAL BACKGROUND

### A.    KNOX SUPPLY IS A PREMIER PROVIDER OF OILFIELD SUPPLIES AND RELATED SERVICES.

12.    Knox Supply[1] is a subsidiary of Applied Industrial Technologies, Inc. ("AIT"). Knox Supply is a leading distributor of products, services and expertise in the oil and gas industry for all land and offshore operations, including drilling, completion, production, and midstream requirements, and it operates from multiple locations in Texas.[2] Its products include downhole pumps, rods, valves and fittings, and general supplies.[3] Its services include pump diagnostics and repair, as well as valve repair.[4]

13.    Knox Supply provides these products and services to upstream and midstream energy companies in the oil and gas industry.[5] To provide these products and services to its clients, Knox Supply employs a technical staff of sales and service technicians.[6]

---

[1] AIT acquired Knox Oil Field Supply, Inc. ("KOFS") in 2014, and KOFS became a subsidiary of AIT. In February 2018, AIT merged KOFS into another of AIT's subsidiaries, Plaintiff Applied US Energy, Inc., with Applied US Energy, Inc. being the surviving entity. Thereafter, in March 2018, Applied US Energy, Inc. filed an Assumed Name Certificate with the Texas Secretary of State for the assumed name "Knox Oil and Supply," and hence began operating as Applied US Energy, Inc. dba Knox Oil Field Supply.

[2] See the Declaration of James A. Jeffiers attached hereto as **Exhibit A** (the "Jeffiers Declaration") and incorporated herein by reference.

[3] *Id.* at ¶ 4.

[4] *Id.*

[5] *Id.* at ¶ 5.

[6] *Id.*

14.     As only one of a handful of companies in its industry, Knox Supply's success has resulted from its development and cultivation of specialized knowledge, highly trained and educated employees, and client and industry know-how gathered over decades of industry practice.[7] Competition within the industry is fierce.[8]

15.     Moreover, Knox Supply has invested substantial time, money, and resources developing and maintaining its customer relationships.[9]

**B.     KNOX SUPPLY'S PROTECTION OF ITS CONFIDENTIAL INFORMATION AND TRADE SECRETS AND PROHIBITIONS AGAINST ENGAGING IN CERTAIN CONDUCT THAT WOULD CREATE A CONFLICT OF INTEREST.**

16.     In order to support its operations, Knox Supply has invested substantial amounts of time and money developing its confidential information and trade secrets which includes its (1) customer lists and customer data; (2) quotes, bids, pricing terms (including discounts or concessions) or incentives Knox Supply offers or provides to any customer or account (or prospective customer or account) for products, technologies, or services; (3) active or pending quotes by Knox Supply to any customer or prospective customer for products, technologies or services; (4) forms for work product utilized by Knox Supply to manage its operations and customer contacts, including standard procedures, report forms, and invoice forms; (5) marketing and bidding strategies for products, technologies or services; (6) market research and competitor research; and (7) pricing, costs, and margins for products, services, and technologies, including estimated revenue and profit per job or account (collectively, the "Confidential Information").[10]

---

[7] *Id.* at ¶ 6.
[8] *Id.*
[9] *Id.* at ¶ 7.
[10] *Id.* at ¶ 8.

Such information is critical to Knox Supply's operations and is the basis for its competitive advantage in the marketplace.[11]

17.    Recognizing the value of its trade secrets and Confidential Information, Knox Supply takes reasonable and necessary steps to keep its trade secrets and Confidential Information secret, including requiring all of its employees to sign and acknowledge its Code of Business Ethics ("Code of Ethics")[12] in which each employee promises not to:

    i.    misappropriate any company asset for personal gain;[13]

### Standards of Conduct

Applied expects that each associate, officer and director will conduct every business transaction with the highest standard of integrity and in accordance with our Core Values. The following conduct compromises the integrity of our workplace and must be avoided:

• Appropriation of any company asset (including scrap, unused inventory, or other items that could provide value to the company) for personal gain or for the benefit of a family member or other party.

    ii.    misappropriate the property of any customer of Knox Supply;[14]

• Misappropriation of the property of another person, a customer or a supplier.

    iii.    take opportunities for themselves that are discovered through the use of Knox Supply's property, information or position; or use Knox Supply's property, information or position for personal gain; *or compete with Knox Supply*;[15]

---

[11] *Id.*
[12] A true and correct copy of Plaintiff's 2021 Code of Business Ethics is attached hereto as **Exhibit B** and is incorporated herein by reference.
[13] *See* Jeffiers Declaration at ¶ 9; Code of Ethics at p. 4.
[14] *See* Jeffiers Declaration at ¶ 9; Code of Ethics at p. 5.
[15] *Id.* (Emphasis added.)

**Corporate Opportunities**

Associates, officers and directors may not (a) take for themselves opportunities that are discovered through the use of Applied property, information or position; (b) use Applied property, information, or position for personal gain; or (c) compete with Applied. Associates, officers and directors owe a duty to Applied to advance the company's legitimate interests when opportunities to do so arise.

    iv.    engage in a manner that could create a conflict of interest such as by participating in any business that competes or interferes with Knox Supply or diverts time and attention away from an employee's job responsibilities at Knox Supply;[16] and

**Conflict of Interest**

A "conflict of interest" occurs when an individual's private interest interferes in any way, or even appears to interfere, with the interests of Applied as a whole. A conflict situation can arise when an associate, officer or director takes actions or has interests that make it difficult to perform his or her company work objectively and effectively. Conflicts of interest also arise when an associate, officer or director, or a member of his or her family, receives improper personal benefits as a result of his or her position with Applied.

Associates, officers and directors must be free to make decisions with complete objectivity. This freedom is assured when there is no conflict of interest in the outcome of any business decision. Examples of situations that create a conflict of interest and must be avoided include:

- Contracting with or providing services (i.e. cleaning services, repair services) to Applied® in exchange for any payment, except for salary, wages, or other company approved payments.

- Ownership, management or participation in any business entity that competes or interferes with Applied or diverts time and attention from job responsibilities at Applied. Associates cannot use company time or assets for outside employment activities – this includes solicitation of Applied associates, vendors, or customers while at work.

---

[16] *See* Jeffiers Declaration at ¶ 9; Code of Ethics at pp. 5-6.

v.  engage in a manner that could create a conflict of interest such as by using company time or assets for outside employment.[17]

> Associates, officers and directors must be free to make decisions with complete objectivity. This freedom is assured when there is no conflict of interest in the outcome of any business decision. Examples of situations that create a conflict of interest and must be avoided include:
>
> • Contracting with or providing services (i.e. cleaning services, repair services) to Applied® in exchange for any payment, except for salary, wages, or other company approved payments.
>
> • Ownership, management or participation in any business entity that competes or interferes with Applied or diverts time and attention from job responsibilities at Applied. Associates cannot use company time or assets for outside employment activities – this includes solicitation of Applied associates, vendors, or customers while at work.

18.    As an additional reasonable and necessary step to keep its trade secrets and Confidential Information secret, Knox Supply requires all of its employees to sign and acknowledge its Employment Policy[18] in which each employee promises not to violate Knox Supply's policies, and defines violations of the Employment Policy to include, without limitation, (i) disclosure of the company's Confidential Information, (ii) misappropriating the company's property, and (iii) violating the company's Code of Ethics.[19]

19.    Knox Supply also takes other reasonable precautions to protect its Confidential Information and trade secrets including, but not limited to: (a) use of computer security passwords and a firewall to prevent unauthorized access to its computer databases; (b) providing "permissions" to access servers and folders only to designated employees; (c) limiting access to electronic data to employees on a "need to know" basis; (d) using password protected emails for

---

[17] *Id.*

[18] A true and correct copy of Knox Supply's Employment Policy ("Employment Policy") is attached hereto as **Exhibit C** and is incorporated herein by reference.

[19] *See* Jeffiers Declaration at ¶ 10; Employment Policy, pp. 6-8.

documents containing confidential account data and information; and (e) keeping all electronic hardware updated with the most recent published security policies.[20]

### C.    HALE'S EMPLOYMENT WITH KNOX SUPPLY.

20.    Defendant Hale began his employment with Knox Supply in 2014 when AIT acquired KOFS, as Hale was an existing employee of KOFS at the time of acquisition. Throughout his employment at Knox Supply, Hale held the position of Corporate Sales in which he was the designated sales representative handling Knox Supply's customer accounts being serviced by Knox Supply's locations in Mertzon, Texas and Sterling City, Texas.[21]

21.    In his role of Corporate Sales for Knox Supply, Hale's duties and responsibilities included actively soliciting business from existing and prospective customers of Knox Supply. He was responsible for managing customer relationships including site calls, customer service, quote and order processing, and full account management over multiple Knox Supply customer accounts.[22]

22.    Like all other Knox Supply employees, Hale was required to acknowledge and agree to Knox Supply's Code of Ethics and Employment Policy, which he repeatedly acknowledged and agreed to over the years of his employment with Knox Supply.[23]

23.    By virtue of his employment with Knox Supply, Hale was introduced to and afforded the opportunity to develop relationships with Knox Supply's largest clients being serviced by Knox Supply's locations in the Mertzon, Texas and Sterling City, Texas regions that Knox Supply had cultivated and grown over much time, expense, and effort.[24]

---

[20] *Id.* at ¶ 11.
[21] *Id.* at ¶ 12.
[22] *Id.* at ¶ 13.
[23] *Id.* at ¶ 14.
[24] *Id.* at ¶ 15.

24.    In other words, Hale was able to use Knox Supply's goodwill within the industry to make key connections and develop relationships with these clients and vendors, gain valuable experience on some of Knox Supply's most notable projects within its industry, and execute projects for Knox Supply's clients at the highest standards.[25]

25.    In his role of Corporate Sales, Hale had access to Knox Supply's Confidential Information and trade secrets including its customer lists and customer data, operations, strategy, and business opportunities.[26] Hale routinely developed and submitted bids to Knox Supply's customers allowing him to calculate profit margins, develop information regarding the profitability of the company by client and region, and was given access to the information contained in the financial reports provided to Knox Supply's Mertzon and Sterling City locations each month.[27] Hale also had access to confidential data and information of Knox Supply's customers, which were often subject to non-disclosure obligations.[28]

26.    In short, Hale's duties in his Corporate Sales position afforded him access to, and required a deep knowledge of, Knox Supply's customer lists and customer data, operations and techniques, employees, and vendors, including a wide range of its Confidential Information that is not intended to be accessible to the company's competitors or the general public.[29]

27.    Information concerning Knox Supply's customer lists and customer data, business strategy (both short and long term), pricing, cost-structure, and business opportunities would allow a competitor to better evaluate projects and price its products and services. Information concerning Knox Supply's existing customer relationships would allow a competitor to specifically target

---

[25] *Id.* at ¶ 16.
[26] *Id.* at ¶ 17.
[27] *Id.*
[28] *Id.*
[29] *Id.* at ¶ 18.

those relationships.[30] Market and strategic planning information, including profit and loss data for Knox Supply's geographic markets, would allow a competitor to better evaluate where and how to invest so as to avoid Knox Supply's failures and emulate its successes.[31] Knox Supply's salary and budget information would allow a competitor to cost-efficiently poach the company's talent.[32] Hale had access to all of this information by virtue of his employment with Knox Supply in his Corporate Sales position for the company.[33] However, this access was conditioned upon Hale's promise not to disclose Knox Supply's Confidential Information or use it for the benefit of any other entity.[34]

### D. HALE'S UNAUTHORIZED ACCESS, USE, AND DISCLOSURE OF KNOX SUPPLY'S CONFIDENTIAL INFORMATION—INCLUDING CONFIDENTIAL INFORMATION OF A CUSTOMER—WHILE STILL EMPLOYED WITH KNOX SUPPLY.

28. It appears that before submitting his resignation, Hale undertook a coordinated effort with his soon-to-be new employer CP&S to target key records and Confidential Information of Knox Supply that he could later use to gain an unfair competitive advantage for CP&S.

29. In the days leading up to his last date of employment with Knox Supply, Hale took a customer email containing documentation for a business engagement and provided such communication and documentation to CP&S, a direct competitor to Knox Supply.[35] Specifically, on May 15, 2023, during Hale's employment with Knox Supply, Knox Supply—through Hale—received an email from one of Knox Supply's customers in which the customer requested Knox Supply to review and sign a Master Services Agreement with that customer and to provide the

---

[30] *Id.* at ¶ 19.
[31] *Id.*
[32] *Id.*
[33] *Id.*
[34] *Id.*
[35] *Id.* at ¶ 20.

customer with Knox Supply's most recent insurance and W-9.[36] Rather than follow the customer's request that Knox Supply enter into the Master Services Agreement, Hale chose instead to direct the business away from Knox Supply and sent the customer's email to "John" at CP&S—Knox Supply's direct competitor and Hale's soon-to-be new employer. He did so while still employed by Knox Supply.[37]

30.     Upon CP&S's receipt of the customer request from Hale, CP&S had its insurance representative provide the customer with a Certificate of Insurance for CP&S which listed the customer as the certificate holder. Based upon information and belief, CP&S ultimately engaged Knox Supply's customer and signed the Master Services Agreement with such customer.[38] Three days after providing Knox Supply's customer communication and documentation to CP&S and conspiring with CP&S to divert business from Knox Supply to CP&S, Hale left his employment with Knox Supply and subsequently joined CP&S.[39]

31.     Additionally, Knox Supply has since discovered that on April 21, 2023, Hale was copied on an email from one of Knox Supply's customer sales representatives to a Knox Supply customer in which Knox Supply was providing a specific price quote to such customer.[40] Three (3) days later on April 24, 2023, less than a month before his employment with Knox Supply ended, Hale forwarded such customer email with Knox Supply's confidential price quote to his ***personal*** email address.[41] Knox Supply did not authorize Hale to send its information or its customer's information to his personal email address.[42]

---

[36] *Id.*
[37] *Id.*
[38] *Id.* at ¶ 21.
[39] *Id.*
[40] *Id.* at ¶ 22.
[41] *Id.*
[42] *Id.*

32.     If an injunction is not entered to prevent Hale and CP&S from using Knox Supply's trade secret and Confidential Information and placing Hale in position at CP&S where it is probable that he will use or disclose Knox Supply's confidential and/or trade secret information, Knox Supply will suffer imminent, irreparable harm for which there is no adequate remedy at law.[43] Specifically, the imminent, irreparable harm which Knox Supply will suffer as a result of Defendants' threatened and actual misappropriation of Knox Supply's trade secrets and Confidential Information includes, but is not limited to, the loss of value of the misappropriated information, loss of future profits, and loss of customer goodwill.[44] Such irreparable harm will be substantial and difficult, if not impossible, to calculate.[45]

## V.     CAUSES OF ACTION

### FIRST CAUSE OF ACTION

#### VIOLATION OF THE FEDERAL DEFEND TRADE SECRETS ACT
#### (DEFENDANTS HALE AND CP&S)

33.     Knox Supply repeats and realleges the allegations contained in the foregoing paragraphs.

34.     The actions of the Defendants, as set forth herein, constitute misappropriation of trade secrets under the Federal Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*

35.     Knox Supply's Confidential Information and trade secrets have economic value because they are not generally known to, and are not readily ascertainable by proper means by, the public or others, including Knox Supply's competitors, which would profit by using or disclosing them.

---

[43] *Id.* at ¶ 23.
[44] *Id.*
[45] *Id.*

36.     Knox Supply's Confidential Information—including trade secrets—includes without limitation its: (1) customer lists and customer data; (2) quotes, bids, pricing terms (including discounts or concessions) or incentives Knox Supply offered or provides to any customer or account (or prospective customer or account) for products, technologies, or services; (3) active or pending quotes by Knox Supply to any customer or prospective customer for products, technologies or services; (4) forms for work product utilized by Knox Supply to manage its operations and customer contacts, including standard procedures, report forms, and invoice forms; (5) marketing and bidding strategies for products, technologies or services; (6) market research and competitor research; and (7) pricing, costs, and margins for products, services, and technologies, including estimated revenue and profit per job or account.

37.     Knox Supply made efforts that were reasonable under the circumstances to maintain the secrecy of its trade secrets.

38.     Defendants Hale and CP&S have improperly acquired and retained Knox Supply's trade secrets.

39.     Defendants Hale and CP&S have used or disclosed, or threatened to use or disclose, Knox Supply's trade secrets without the consent of Knox Supply.

40.     Due to Defendants Hale and CP&S's actual and threatened misappropriation of Knox Supply's trade secrets, Knox Supply has suffered and will continue to suffer irreparable harm for which it has no adequate remedy at law in the absence of injunctive relief, including but not limited to, the loss of the value of Knox Supply's trade secrets and the loss of customer goodwill.  In addition, Knox Supply has suffered and will continue to suffer damages in the form of lost business.

41.     Alternatively and without waiving the foregoing, Knox Supply also seeks from Defendants Hale and CP&S its actual damages, plus court costs and reasonable and necessary experts' fees and attorneys' fees.

**SECOND CAUSE OF ACTION**

**VIOLATION OF THE TEXAS UNIFORM TRADE SECRETS ACT
(DEFENDANTS HALE AND CP&S)**

42.     Knox Supply repeats and realleges the allegations contained in the foregoing paragraphs.

43.     During his employment with Knox Supply, Hale had access to Knox Supply's Confidential Information and trade secrets that have economic value because they are not generally known to, and not readily ascertainable by proper means by, the public or others, including Knox Supply's competitors, which could profit by using or disclosing them.

44.      Knox Supply made efforts that were reasonable under the circumstances to maintain the secrecy of its Confidential Information and trade secrets.

45.     Defendants Hale and CP&S have improperly acquired and retained Knox Supply's Confidential Information and trade secrets.

46.     Defendants Hale and CP&S have used or disclosed, or threatened to use or disclose, Knox Supply's trade secrets without the consent of Knox Supply.

47.     Due to Defendants' Hale and CP&S's actual and threatened misappropriation of Knox Supply's trade secrets, Knox Supply has suffered and will continue to suffer irreparable harm, for which it has no adequate remedy at law and in the absence of injunctive relief, including but not limited to the loss of the value of Knox Supply's trade secrets and the loss of customer goodwill.  Additionally, Knox Supply suffered and will continue to suffer damages in the form of lost profits and business.

48.     The foregoing establishes a violation of the Texas Uniform Trade Secrets Act, Chapter 134A of the Texas Civil Practices and Remedies Code.

49.     Hale and CP&S have willfully misappropriated Knox Supply's Confidential Information and/or trade secrets. As such, Knox Supply is entitled to its reasonable attorneys' fees for pursuing this cause of action pursuant to Section 134A.005(3) of the Texas Civil Practice and Remedies Code.

50.     Alternatively, and without waiving the foregoing, Knox Supply also seeks from Defendants Hale and CP&S its actual damages, plus court costs and reasonable and necessary experts' fees and attorneys' fees.

### THIRD CAUSE OF ACTION

### CIVIL CONSPIRACY
### (DEFENDANTS HALE AND CP&S)

51.     Knox Supply repeats and realleges the allegations contained in the foregoing paragraphs.

52.     While Hale was still employed with Knox Supply, and continuing after Hale joined CP&S, Hale and CP&S conspired to access and use Knox Supply's trade secrets and Confidential Information without Knox Supply's consent to divert business away from Knox Supply for the benefit of Hale and CP&S, in violation of the Federal Defend Trade Secrets Act and the Texas Uniform Trade Secrets Act.

53.     Hale and CP&S conspired to misappropriate Knox Supply's trade secrets and Confidential Information, and a meeting of the minds occurred to complete that object and course of action.

54.     Knox Supply has suffered losses and damages by reason of these violations, including but not limited to the loss of the value of Knox Supply's Confidential Information, the

loss of Knox Supply's customer goodwill, the costs incurred in connection with this lawsuit to determine the loss of Knox Supply's data as well as the costs and expenses incurred in attempting to recover the data, as well as other economic damages in the form of lost business.

### FOURTH CAUSE OF ACTION

### TORTIOUS INTERFERENCE WITH CONTRACT
### (DEFENDANTS HALE AND CP&S)

55.     Knox Supply repeats and realleges the allegations contained in the foregoing paragraphs.

56.     Knox Supply has an ongoing, contractual business relationship with its customers. Defendants knew of Knox Supply's business relationships with its customers by virtue of Hale's employment position with Knox Supply, including his access to Knox Supply's Confidential Information including its customer data.

57.     Through Defendants' unauthorized access to and use of Knox Supply's Confidential Information, Defendants contacted at least one (1) of Knox Supply's customers and attempted to, successfully, divert business away from Knox Supply to CP&S, thus intentionally interfering with Knox Supply's existing customer relationships through the improper use of Knox Supply's Confidential Information, trade secrets, and property.

58.     Knox Supply suffered actual damages from Defendants' interference because it prevented Knox Supply from continuing its business relationships with certain existing customers and/or obtaining additional business from such customers.

59.     Further, these ongoing and/or threatened acts of Defendants have caused and will continue to cause Knox Supply irreparable harm and/or damage in excess of the minimum jurisdictional limits of the Court, for example, by depriving Knox Supply of the goodwill of its

customers, or relationships with its customers, Knox Supply has suffered and/or will continue to suffer irreparable harm for which there is no legal remedy.

60.     Among other relief, Knox Supply seeks injunctive relief and compensation for all damages and losses proximately caused by the wrongful conduct of Defendants, in addition to attorneys' fees, expenses, and costs, any other remedies available under federal or Texas law, and any and all further relief this Court deems just and proper.

## VI.     APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

61.     Knox Supply repeats and realleges the allegations contained in the foregoing paragraphs.

62.     Knox Supply is entitled to a temporary restraining order and a preliminary injunction because it has suffered and will continue to suffer imminent harm and irreparable injury as a result of the wrongful acts and omissions of Hale and CP&S, as described above. The injury to Knox Supply described herein is not accurately measurable and Knox Supply cannot be adequately compensated in damages.

63.     There is no adequate remedy at law for the harm to Knox Supply described herein. The facts and events plead herein demonstrate a clear likelihood that Knox Supply will prevail on the merits of its case.

64.     Due to the severity of the conduct described herein, the injury faced by Knox Supply outweighs any injury that would be sustained by Hale and CP&S as a result of the injunctive relief requested.

65.     The granting of injunctive relief would not adversely affect public policy or public interest. Knox Supply will suffer immediate and irreparably injury, loss, or damages if an immediate temporary restraining order is not granted before Hale and CP&S can be heard and

notice should not be required because there are no less drastic means to protect Knox Supply's interests. Knox Supply's request for a temporary restraining order is limited to preserving the status quo only as long as necessary to hold a preliminary injunction hearing.

66.     Hale and CP&S have possession of, have likely used, and are in a position to use Knox Supply's trade secrets and Confidential Information in direct competition with Knox Supply.

67.     Hale and CP&S's disclosure and use of Knox Supply's trade secrets and Confidential Information will cause Knox Supply to suffer irreparable harm, including the loss of value of its Confidential Information and trade secret information, the loss of the value of its customer goodwill, and its competitive place in the market, for which it has no adequate remedy at law.

68.      Each day that Hale and CP&S continue their acts and omissions brings additional irreparable harm and damages to Knox Supply.  Therefore, Knox Supply will suffer irreparable harm and damages for which Knox Supply has no adequate remedy at law unless this Court intervenes and enters a temporary restraining order and, pending a trial on the merits, a preliminary injunction ordering the relief requested below.

## VII.    ATTORNEYS' FEES & COSTS

69.     Knox Supply repeats and realleges the allegations contained in the foregoing paragraphs.

70.     Knox Supply is entitled to recover all expenses associated with this litigation, including attorneys' fees, expert fees, and costs, under all applicable laws.

## VIII.   EXEMPLARY DAMAGES

71.     Knox Supply repeats and realleges the allegations contained in the foregoing paragraphs.

72.    Defendants' wrongful conduct described above was intentional, willful, malicious, and in conscious disregard to Knox Supply's rights. To deter Defendants' wrongful conduct and to deter others from engaging in similar wrongdoing, exemplary damages should be assessed against Defendants.

## IX.    JURY DEMAND

73.    Knox Supply demands a trial by jury on all issues triable to a jury.

## X.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff Knox Supply seeks judgment in its favor as follows:

1.    A temporary restraining order and, pending trial on the merits, a preliminary injunction ordering Defendants and their respective officers, agents, servants, employees, and those in active concert or participation with them, as follows:

A.    Defendants immediately cease the use and/or disclosure of any Knox Supply trade secret and Confidential Information, including but not limited to, (1) customer lists and customer data; (2) quotes, bids, pricing terms (including discounts or concessions) or incentives Knox Supply offered or provides to any customer or account (or prospective customer or account) for products, technologies, or services; (3) active or pending quotes by Knox Supply to any customer or prospective customer for products, technologies or services; (4) forms for work product utilized by Knox Supply to manage its operations and customer contacts, including standard procedures, report forms, and invoice forms; (5) marketing and bidding strategies for products, technologies or services; (6) market research and competitor research; and (7) pricing, costs, and margins for products, services, and technologies, including estimated revenue and profit per job or account;

B.    Defendant Hale immediately cease using Knox Supply's trade secrets and Confidential Information to induce, solicit, or otherwise contact any clients or customers of Knox Supply who Hale knows are customers of Knox Supply and who Hale had direct contact with or had learned proprietary information regarding to patronize or enter into any agreement with CP&S or any other person or entity engaged in the business of providing or distributing products, services or expertise in the oil and gas industry for all land and offshore operations, including drilling, completion, production, and midstream requirements, including but not limited to, persuading or inducing any Knox Supply to terminate or fail to renew or extend said customer's relationship with Knox Supply;

C. Defendant CP&S immediately cease using Knox Supply's trade secrets and Confidential Information to induce or solicit any clients or customers of Knox Supply that CP&S first learned about from Hale, or that were first introduced to CP&S through Hale, to patronize or enter into any agreement with CP&S or any other person or entity engaged in the business of providing or distributing products, services or expertise in the oil and gas industry for all land and offshore operations, including drilling, completion, production, and midstream requirements;

D. Return all of Knox Supply's trade secrets and Confidential Information, whether in hard copy or electronic media, to Knox Supply immediately;

E. Hale preserve for inspection and production any and all cell phones, computer, and other electronic storage devices (including, but not limited to, iPads, tablets, hard drives, USB devices, thumb drives, flash drives, and external hard drives) which are in his possession, custody, or control;

F. Hale preserve for inspection and production all data maintained on all personal e-mail accounts and cloud storage accounts that he has used any time since January 1, 2023; and

G. Hale disclose to Knox Supply the names and identities of all persons and/or entities to whom he has provided Knox Supply's trade secrets and Confidential Information and for whose benefit Hale has used Knox Supply's trade secrets and Confidential Information.

2. Knox Supply's actual damages, including lost profits and other damages, against Defendants;

3. Exemplary damages in the maximum amount permitted under the law to Knox Supply against Defendants;

4. Attorneys' fees and costs;

5. Prejudgment and post-judgment interest to Knox Supply at the highest rate allowable by law; and

6. All other such relief, legal or equitable, to which Knox Supply may be entitled.

Dated: June 30, 2023

Respectfully submitted,

**BAKER & HOSTETLER LLP**

*/s/ L. David Anderson*
L. David Anderson
State Bar Number 00796126
danderson@bakerlaw.com
Kendall Viator
State Bar Number 24131733
kviator@bakerlaw.com
2850 North Harwood Street, Suite 1100
Dallas, TX 75201-2640
Telephone:        214.210.1200
Facsimile:        214.210.1201

**Attorneys for Plaintiff Applied US Energy,
Inc. dba Knox Oil Field Supply**